

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
May 8, 2020 02:51 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 944906

**OBRIEN ENTERPRISES LLC**                    **A 2001829**

**vs.**

**BB FRANCHISING LLC**

## FILING TYPE:  INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND

## PAGES FILED: 88

## EXHIBIT A

EFR200



VERIFY RECORD

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY**

| | |
|---|---|
| **O'Brien Enterprises, LLC** | : |
| **and** | : **Case No.** |
| **A&A Enterprises, LLC** | : |
| | : |
| **PLAINTIFFS** | : **JUDGE** |
| | : |
| **v.** | : |
| | : |
| **B&B Franchising, LLC** | : |
| C/o 3800 Red Bank Road, LLC, Agent | : |
| for Service of Process | : |
| 3800 Red Bank Road | : |
| Cincinnati, OH 45227 | : |
| | : **CLASS ACTION COMPLAINT** |
| | : **AND JURY DEMAND** |
| **JANI-KING INTERNATIONAL, INC.** | : |
| C/o CT Corporation System, | : |
| Statutory Agent | : |
| 1999 Bryan St, Suite 900 | : |
| Dallas, TX 75201-3136 | : |
| | : |
| **JANI-KING INC.** | : |
| C/o CT Corporation System, | : |
| Statutory Agent | : |
| 1999 Bryan St, Suite 900 | : |
| Dallas, TX 75201-3136; | : |
| | : |
| **and** | : |
| | : |
| **JANI-KING FRANCHISING, INC.** | : |
| C/o CT Corporation System, | : |
| Statutory Agent | : |
| 1999 Bryan St, Suite 900 | : |
| Dallas, TX 75201-3136 | : |
| | : |
| **DEFENDANTS** | : |

**PARTIES AND JURISDICTION**

1. Plaintiff A&A of Cincinnati Enterprise, LLC is an Ohio limited liability corporation with its principal place of business in Hamilton County, Ohio.

1

2. Plaintiff O'Brien Enterprises, LLC is a Kentucky limited liability corporation with its principal place of business in Kentucky.

3. Defendant B&B Franchising LLC is a Colorado limited liability company with its principal place of business in Hamilton County, Ohio.

4. Defendant JANI-KING FRANCHISING, INC. is incorporated and has its principal place of business in Texas.

5. Defendant JANI-KING INTERNATIONAL, INC. is incorporated and has its principal place of business in Texas.

6. Defendant JANI-KING INC. is incorporated and has its principal place of business in Texas.

7. Defendant B&B Franchising is in the business of providing janitorial services to commercial, residential, industrial and other accounts.

8. Plaintiff A&A and Defendant B&B Franchising entered executed a document entitled "Franchise Agreement" on or about January of 2018. (See Ex. A.)

9. Plaintiff O'Brien and Defendant B&B Franchising entered executed a document entitled "Franchise Agreement" on or about September of 2014. (See Ex. B.)

10. The Franchise Agreement provides that jurisdiction and venue are exclusively within Hamilton County, Ohio.

11. The amount in controversy exceeds the jurisdictional limits of this Court.

## FACTUAL BACKGROUND
### The Franchise Disclosure Statement

12. Plaintiffs re-allege and restates each and every preceding Paragraph as if rewritten herein at length.

13. Defendant B&B Franchising provided a "Franchise Disclosure Agreement" to Plaintiff A&A on or about October of 2017.

14. The Franchise Disclosure Document bears the title: B&B's Franchising, LLC d/b/a JANI-KING OF CINCINNATI. The first sentence of the Franchise Disclosure Document states: "B&B Franchising, LLC dba JANI-KING OF CINCINNATI is the franchisor."

15. The Franchise Disclosure Document states: "Our principal business address is 3800 Red Bank Road, Cincinnati Ohio 45227."

16. B&B Franchising is not registered to do business in Ohio under the fictitious name of Jani-King of Cincinnati.

17. B&B Franchising's previous registration with the Ohio Secretary of State of the name JANI-KING OF CINCINNATI as its fictitious name expired on October 31, 2010.

2

18.  Defendant's representation to Plaintiff A&A that Jani-King of Cincinnati is its d/b/a is false and misleading.

19.  Under 16 CFR §436.5 (b) the Franchisor must: "Disclose by name and position the franchisor's directors, trustees, general partners, principal officers, and any other individuals who will have management responsibility relating to the sale or operation of franchises offered by this document."

20.  Under 16 CFR §436.5(c), the Franchisor must disclose any pending litigation against all persons identified under 16 CFR § 436.5(b) "alleging fraud, unfair or deceptive practices" among other allegations.

21.  Defendant listed the "Officers and Directors of B&B Franchising, LLC, d/b/a/ Jani-King of Cincinnati as follows:

Chief Executive Officer:  Robert Seylhouwer:  Robert Seylhouwer joined B&B Franchising LLC as CEO in May, 2004.  In January 2011, Mr. Seylhouwer stepped down as CEO, but continued to remain as a General Partner....

Chief Operating Officer:  Cheryl Seylhouwer: Cheryl Seyhouwer joined B&B Franchising, LLC as Executive Administrator in May 2004.  In January 2011, Mrs. Seylhouwer was promoted to COO and General Partner of B&B Franchising, LLC....

President: James Dixon:  James Dixon joined B&B Franchising, LLC as Regional Director in July 2008.  In November 2014, Mr. Dixon was promoted to President....

22.   B&B Franchising further disclosed:

The following individuals are employed by us and have management responsibility relating to the sale or operation of franchises offered under this disclosure document:

Director of Franchise/Customer Accounting - Jennifer King.  Jennifer King joined B&B Franchising LLC, as Director of Franchise/Customer Accounting in October 2016. ...

23.   B&B Franchising listed no other individuals as general partners, principal officers, directors, or as persons having management responsibility for B&B Franchising LLC, d/b/a Jani-King of Cincinnati.

24.  B&B Franchising failed to disclose to Plaintiff A&A that Mr. Jerodd Atwood was its Vice President of Operations.

25.  B&B Franchising failed to disclose Mr. Atwood's identity even though he was directly responsible for managing the contract of sale for the franchise purchased by Plaintiff A&A.

26.  Defendant failed to disclose that an arrest warrant was pending against Mr. Atwood, B&B Franchising's Vice President of Operations, issued on October 29, 2015 for a fifth degree felony of passing bad checks in 2014.

3

27.  Defendant further failed to disclose that while Plaintiff A&A was in the process of working with Mr. Atwood to finalize the sale of the franchise and arrange for franchisee training, Mr. Atwood was arrested on November 7, 2017 on two felony counts of passing bad checks arising from the incident in 2014.

28.  The criminal charges against Mr. Atwood were not resolved until January 8, 2018 by Atwood's payment of $2,626 in restitution to the victim, through the auspices of the probation department in Cuyahoga County, Ohio.

29.  Plaintiff A&A executed its agreement to purchase a franchise from B&B Franchising on January 15, 2018, wholly unaware of Mr. Atwood's arrest and the criminal proceedings against him for passing bad checks.

30.  B&B Franchising also failed to disclose to A&A that the original incorporator of B&B Franchising, LLC, Blake Robert Seylhouwer, son of Robert Seylhouwer and Cheryl Seylhouwer, was actively involved in the management, operations and/or finances of B&B Franchising.

31.  Mr. Blake Seylhouwer originally incorporated B&B Franchising LLC on May 7, 2004 with this father Robert Seylhouwer.

32.  On October 19, 2005, Blake Seylhouwer filed with the Ohio Secretary of State a "corrected registration" for a foreign corporation for "B&B Franchising, LLC."

33.  On October 31, 2005, B&B Franchising, LLC filed a "Fictitious Name - Original Filing" to register the name "Jani-King of Cincinnati."  This document was filed by Blake Seylhouwer.

34.  B&B Franchising's registration of the name "Jani-King of Cincinnati" expired on October 31, 2010 and was never renewed.

35.  Blake Seylhouwer indicated on his Linked In Page that he was President/Owner of Jani-King of Cincinnati from August 2005 through June 2015.

36.  On December 16, 2009, Blake Seylhouwer incorporated a company called "3800 Red Bank Road, LLC."

37.  3800 Red Bank Road is the address for B&B Franchising, which purports to do business as Jani-King of Cincinnati.

38.  On May 3, 2017, B&B Franchising, LLC filed a "subsequent agent appointment" naming "3800 Red Bank Road, LLC" as its agent.

39.  Blake Seylhouwer is the principal of 3800 Red Bank Road, LLC, the company acting as the Agent for service of process B&B Franchising, LLC from 2017 to the present.

40.  Upon information and belief, Jani-King International, JKI and/or JFK required Blake Seylhouwer to divest himself of the "Jani-King of Cincinnati" Franchise due to criminal convictions.

4

41. Specifically, on or about February 27, 2015 Blake Seylhouwer was convicted of two counts of misdemeanor assault against his wife in a widely publicized incident involving the firing of a gun in the driveway of their home, which allegedly resulted in a shrapnel injury to his wife.

42. In addition to the conviction on two counts of assault in 2015, according to newspaper reports, in 2005 Blake Seylhouwer had also been "arrested and charged with importuning, attempted pandering sexually oriented matter involving a juvenile and attempted illegal use of a minor in nudity oriented material or performance" in Franklin County, Ohio, to which "he pleaded guilty in July 2007 to reduced charges of telephone harassment and public indecency, both misdemeanors."

43. B&B Franchising failed to state in its Disclosure Documents that Blake Seylhouwer maintained an office at Jani-King's headquarters, and was actively involved in its management, operations and/or finances.

44. B&B Franchising represented to the contrary that other persons were exclusively responsible for its management, operations and/or finances.

45. Robert Seylhouwer and Cheryl Seylhouwer, the purported "general partners" of the LLC, reside in Colorado and do not maintain offices at Jani-King of Cincinnati's headquarters at 3800 Red Bank Road.

46. B&B Franchising, Robert and Cheryl Seylhouwer failed to disclose that Blake Seyhlhouwer would be acting with their authority as the representative of the owner or as an actual owner of B&B Franchising.

47. Blake Seylhouwer introduced himself to Mr. Holliday of A&A as the owner of Jani-King of Cincinnati after A&A became a franchisee.

48. As the authorized representative of B&B Franchising and its owners/members Robert and Cheryl Seylhouwer, Blake Seylhouwer is also an affiliated person controlled by, or under common control with, the seller of the franchise pursuant to ORC 1334.01(F).

49. On September 18, 2015, Blake Seylhouwer incorporated another Ohio company called Shantaram, LLC.

50. On October 1, 2015, Blake Seylhouwer filed a trade name registration for Shantaram, LLC, located at 3800 Red Bank Road, for the name "The Healing Center of Cincinnati."

51. Effective June 2, 2016 Blake Robert Seylhouwer legally changed his name to Blake Robert Daniels.

52.  As of July 21, 2016, Blake Daniels is listed as the agent for service of process for Shantaram, LLC, under the registered tradename THC of Cincinnati, at 3800 Red Bank Road.

53. On April 25, 2017, Blake Daniels filed articles of incorporation for "Cobra Management, LLC."

5

54. On October 19, 2018, Blake Daniels as the authorized representative of Cobra Management, LLC filed a fictitious name registration for Realty One Group Queen City, located at 3800 Red Bank Road, Suite C.

55. On November 1, 2012, 3800 Red Bank Road, LLC registered Dutch Property Management as a trade name, in a filing signed by Blake Seylhouwer as the Managing Member, also located at 3800 Red Bank Road.

56. On February 17, 2019, Cobra Management, LLC, through its authorized representative Blake Daniels, registered the fictitious name "Realty One Group QC," located at 3800 Red Bank Road, Suite C.

57. On February 21, 2019 Cobra Management, LLC, through its authorized representative Blake Daniels, registered the fictitious name "Prosperity," located at 3800 Red Bank Road, Suite C.

58. B&B Franchising failed to disclose in the Disclosure Document the active participation by Blake Seylhouwer, now known as Blake Daniels, in its own ownership, operations, management and finances, or the participation of Blake Seylhouwer in the ownership, operations, management and finances of multiple additional entities at its 3800 Red Bank Road headquarters.

## FACTUAL BACKGROUND
### The Franchise Agreement

59. Plaintiffs re-allege and restates each and every preceding Paragraph as if rewritten herein at length.

60. The Franchise Agreement between Antoine W. Holliday on behalf of A&A of Cincinnati Enterprises, LLC (Franchisee) and Jennifer King, Office Manager of Jani-King of Cincinnati (Franchisor) was executed on January 15, 2018.

61. Plaintiff A&A paid a fee of $22,000 in consideration in order to become a franchisee.

62. On January 18, 2018, James R. Dixon "accepted" the Franchise Agreement as the purported "authorized representative" of the Franchisor (B&B Franchising, LLC.)

63. The Franchise Agreement between Michael O'Brien on behalf of O'Brien Enterprises, LLC (Franchisee) and Blake Seylhauwer Office Manager of Jani-King of Cincinnati (Franchisor) was executed on September 30, 2014.

64. Plaintiff O'Brien Enterprises purchased the franchise as a transfer from another franchisee.

65. All other material terms of the Franchise Agreements executed by A&A and O'Brien Enterprises are identical.

66. On October, 8, 2014, James R. Dixon "accepted" the Franchise Agreement as the purported "authorized representative" of the Franchisor (B&B Franchising, LLC.)

6

67. The Franchise Agreement states: "This Agreement shall not be binding on Franchisor unless and until it has been accepted and signed by an officer or director of Franchisor at Franchisor's home office in Aurora, Arapahoe County, Colorado.

68. James Dixon identifies himself as the President of Jani-King of Cincinnati and resides in the Greater Cincinnati area. James Dixon is not located in Colorado.

69. Pursuant to the Franchise Agreement, Defendant B&B was obligated to provide certain financial, marketing and operational services, and to initially assign accounts to Franchisees.

70. As Franchisees, Plaintiffs provided janitorial services to their accounts, and agreed to have the billing for all accounts paid directly to B&B Franchising.

71. Pursuant to the Franchise Agreement, B&B was to collect all billing, deduct agreed upon expenses for royalties and other amounts authorized by the Franchise Agreement, then pay the remainder back to each Franchisee on the 10th of each month (or the next business day after the 10th.)

72. Plaintiffs performed all obligations under the contract in a timely and professional manner.

73. Beginning as early as December of 2018, B&B Franchising began a pattern of breaching its obligation to timely pay franchisees. Instead, Defendant began a practice of providing checks written on accounts with insufficient funds, causing its payments owed to Plaintiffs under the Franchise Agreement to bounce.

74. B&B Franchising's check to A&A dated December 5, 2018 and tendered on December 10, 2018 for $8,953.33 bounced.

75. B&B Franchising's check to A&A dated February 5, 2020 and tendered on February 10, 2020 for $6,214.80 bounced.

76. B&B Franchising's check to A&A dated April 5, 2020 and tendered on April 10, 2020 for $7,992.34 bounced.

77. Plaintiff A&A's banker raised concerns about the repeated deposit of bad checks from Jani-King.

78. On July 13, 2018, Plaintiff O'Brien Enterprises learned that two checks written to from B&B Franchising, in the amounts of $43,296.04 and $1,240.00 bounced.

79. The high value of the bad check written by B&B Franchising to O'Brien Franchising caused significant concern at O'Brien's bank and among personnel at his bank and damaged the business reputation and goodwill of O'Brien Franchising.

80. Plaintiffs A&A and O'Brien Enterprises are aware that B&B Franchising's checks written to multiple other Franchisees, including checks written to franchisees on January 10, 2020, February 10, 2020, March 10, 2020 and April 10, 2020

bounced. Certain Franchisees report that every check written to them by B&B Franchising for January, February, March and April of 2020 bounced.

81. For example, B&B Franchising's check written to another Franchisee on March 5, 2020 and tendered on March 10, 2020 for $3,956.75 bounced.

82. Upon information and belief, B&B Franchising tendered hundreds of bad checks to Franchisees over the past two years.

83. The rejection of B&B Franchising's bad checks by their banks deprived Franchisees of timely access to funds needed to compensate their workers, creating problems with their banking relationships and damaged their business goodwill.

84. B&B Franchising also failed to process required "Franchise Owner Reports" in a timely or accurate manner, and had inadequate staff to fulfill its obligations to its nearly 100 franchisees.

85. On April 14, 2020, the Office Manager for Jani-King of Cincinnati sent a group email to franchisees requesting patience in providing corrections and changes to their Franchise Owner Reports.

86. Plaintiff A&A through its owner Antoine Holliday responded by requesting that Defendant B&B engage sufficient employees to fulfill its obligations to Franchisees.

87. Later that day, Plaintiff A&A learned that Defendant's April 10, 2020 check had also bounced.

88. Finding the situation intolerable, Plaintiff A&A requested through counsel that B&B Franchising acknowledge that it had materially breached the Franchise Agreement through its practice of passing bad checks, that the agreement should be considered void, and the non-compete and non-solicitation provisions of the contract were therefore unenforceable.

89. B&B Franchising responded through counsel refusing Plaintiff A&A's request and claiming that "The issuance of the alleged bad checks were due to a changeover in Jani-King's bank."

90. B&B Franchising's explanation is false. Defendant's bank did not change from January through April of 2020, but instead was always First National.

91. Further, while Defendant did at one point change banks, its move to a different bank did not cause the bounced checks in July and December of 2018.

92. B&B Franchising's actions in passing bad checks, deliberately breaching its obligation to timely pay Franchisee's by the tenth of each month, and misrepresenting that the checks bounced inadvertently due to a "changeover" in its banks, constitutes bad faith and fraud.

8

## CLASS ACTION ALLEGATIONS

93. Plaintiffs re-allege and restate each and every preceding Paragraph as if rewritten herein at length.

94. Plaintiffs bring this action pursuant to Rule 23, Ohio R. Civ. P., on behalf of all Franchisees of B&B Franchising as of March 16, 2020, who have suffered and continue to suffer damages in the operations of their franchise due to the wrongful conduct of Defendants.

95. Plaintiff A&A further brings this action pursuant to Rule 23, Ohio R. Civ. P., on behalf of a subclass of all Franchisees who meet the Class definition and who purchased their franchise directly from B&B Franchising and received from B&B a Franchise Disclosure Document dated April 2017 which contained material misstatements and omissions, including the failure to disclose the identity, arrest warrant, and criminal proceedings involving B&B Franchising's Vice President of Operations for passing bad checks.

96. Plaintiffs are members of the class they seek to represent.

97. The members of the class are so numerous that joinder is impracticable, in that the Class is anticipated to be near one hundred members, and the Subclass is anticipated to include several dozen members.

98. The claims of Plaintiffs are typical to the claims of other members of the Class, in that they entered franchise agreements with B&B Franchising on or before March 20, 2020, they suffered harm due to B&B Franchising's passing of bad checks to franchisees, and they suffered harm from Defendants' other wrongful acts and breaches of contract.

99. The claims of A&A are further typical of the subclass in that A&A entered into a Franchise Agreement in January of 2018, having relied upon a Disclosure Document from B&B Franchising dated April 2017, which contained material misrepresentations and omissions.

100. The proposed class representatives have no interests which conflict with those of the other members of the class, and have retained counsel well experienced in class action litigation, thus making the named plaintiffs adequate class representatives.

101. The claims of Plaintiffs raise issue of law and fact common to the other members of the class, including but not limited to:

    a. Whether B&B Franchising breached the Franchise Agreement by failing to timely pay class members as required by the terms of the Franchise Agreement through its pattern and practice of tendering bad checks, entitling Plaintiffs and the class to an award of compensatory damages and other forms of relief;

9

b.      Whether B&B Franchising acted willfully in its pattern and practice of tendering bad checks to class members, entitling class members to an award of punitive damages, attorneys' fees and costs;

c.      Whether Defendants JK INT'L, JKF and JKI negligently supervised B&B Franchising, proximately resulting in harm to class members causing economic loss, damage to goodwill, emotional distress and diminution of the value of their franchises and the Jani-King trade name;

d.      Whether Defendants permitted unscrupulous persons to remain involved in the management of B&B Franchising's operations and finances, proximately causing class members to suffer economic and non-economic harm;

e.      Whether B&B Franchising made material misrepresentations of fact to class members, including the material misrepresentation that its passing of bad checks was inadvertent;

f.      Whether B&B Franchising fraudulently induced members of the subclass to enter into Franchise Agreements by providing an inaccurate and misleading Disclosure Document;

g.      Whether class members are entitled to rescission, restitution, contract reformation, injunctive relief and/or damages.

h.      Whether the purported non-compete and non-solicitation clauses in the Franchise Agreement are void upon rescission of the contract; and/or whether they are unenforceable due to B&B Franchising's lack of clean hands;

i.      Whether B&B Franchising has any legitimate interest that would permit enforcement of restrictive covenants against class members, and whether the geographic and temporal scope of the provisions are overbroad;

j.      Whether class members are entitled to punitive damages.

102.  Certification of this action as a class action pursuant to Ohio R. Civ. P. 23(B)(a)(b) is appropriate because the prosecution of individual actions by members of the class would create a risk that adjudications on behalf of individual members would, as a practical matter, be dispositive of the interests of the other members of the class, or substantially impair or impede their ability to protect their interests, particularly where, as here, the Plaintiffs request that the Franchise Agreement with B&B Franchising be rescinded or reformed, and Plaintiffs seek restitution of funds wrongfully retained.

103.  Certification of this action as a class pursuant to Ohio R. Civ. P. 23(B)(2) is appropriate because Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole, in the form of declaration that the Franchise Agreements are rescinded or reformed, and issuing an injunction prohibiting Defendants from attempting to enforce any purported terms of the Franchise Agreement.

104.  Certification of this action as a class pursuant to Ohio R. Civ. P. 23(B)(3) is appropriate because common issues of law and fact predominate over individual issues, and class certification is the superior means of resolving these claims, which would otherwise be practicable for individual claimants to pursue. Plaintiffs are aware of no similar class action or individual action pending to resolve these issues, and concentration of this matter in one forum is desirable for all parties involved.  Management of the class will not be difficult because identification of class members will be easily ascertained, and in fact all class members were required to establish email accounts to communicate with Defendants.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (Defendant B&B Franchising)

105.  Plaintiffs re-allege and restate each and every preceding Paragraph as if rewritten herein at length.

106.  The Franchise Agreement requires that all billing for janitorial services and collection of payment from accounts be conducted by B&B Franchising.

107.  Upon receipt of payments from accounts, B&B is required to prepare a "Franchise Report" reflecting the amounts payable to B&B and the amounts payable to the Franchisee.  Roughly 20-30% of the total billings are retained by B&B for various royalties, expenses and services it purports to provide as the Franchisor.

108.  After resolution of any discrepancies on the Franchise Report, B&B is required to remit payment to the Franchisee as follows:

"On the tenth (10th) day of each month, Franchisor will disburse to Franchisee the amount of money appearing in the "Due Franchisee Column" of the Franchisee Report for the preceding month."

109.  B&B Franchising refuses to pay Franchisees by direct deposit and refuses to mail payments.  Instead, Defendant B&B requires each Franchisee to drive to its office location on Red Bank Road to pick up a check for payment on the 10th of each month.

110.  B&B Franchising breached its obligation to disburse money owed to Plaintiffs and the class on the tenth of each month, by engaging in a pattern of tendering payment through checks drawn on an account with insufficient funds.

111.  B&B Franchising knows that its bank account lacks sufficient funds to pay its Franchisees, but tenders bad checks to Plaintiffs and the class in order to create the pretext that it is complying with its obligation to pay Franchisees by the 10th of each month.

112.  By tendering bad checks, B&B Franchising manufactures a delay in its payment obligations to Plaintiffs and the class.  Franchisees do not learn that the checks

have bounced for several days; then they must contact Defendant for a new check, drive back to Red Bank Road to pick up the new check, and then deposit the second check and wait for it to clear before they can access the funds owed to them.

113. B&B Franchising's pattern and practice of writing bad checks to Plaintiffs and the class provides it the means to delay payment by a week or more.

114. B&B Franchising deliberately provided a false explanation to A&A for the passing of bad checks, by claiming in writing that the reason the checks bounced is that a "changeover" in banks has occurred.

115. B&B Franchising's excuse about changed banks is patently false, and provides further evidence of willful misconduct.

116. Upon information and belief, Defendant B&B Franchising has made similar false statements to other members of the class to justify its practice of passing bad checks as an inadvertent mistake.

117. Absent complete incompetence or illegality, it is inexplicable that B&B Franchising lacks funds to pay Franchisees, inasmuch as the Franchise Agreement provides that billings for all accounts are paid directly to B&B Franchising, then B&B deducts its portion from the funds received and pays the remainder back to the Franchisees.

118. B&B Franchising has further breached the Franchise Agreement by taking unauthorized deductions from the accounts of Franchisee members of the class, including but not limited to A&A and O'Brien Enterprises, causing a loss of revenue to its Franchisees in violation of contract.

119. Upon information and belief, B&B Franchising's unauthorized deductions include wrongful deductions of Finders' Fees for new business, misrepresentation to Franchisees of the actual value of the account (allowing B&B Franchising to skim money off the top), and/or other contractual violations resulting in lost revenue to Franchisees.

120. B&B Franchising Vice-President Terry Behrle wrongfully claimed credit for a new account generated by A&A Franchising, costing A&A Franchising recognition and business goodwill.

121. Upon information and belief, B&B Franchising wrongfully represented the value of a contract for services at several Kroger's locations, thereby depriving O'Brien Enterprises revenue owed for services provided.

122. B&B Franchising has engaged in a similar pattern and practice of wrongfully deducting payments or misrepresenting the value of contracts to other Franchisees or falsely claiming credit for new accounts, in violation of the terms of the Franchise Agreement.

123. B&B Franchising has also breached the Franchise Agreement by seizing long established customer accounts from established franchise owners without

12

providing contractually required notice and an opportunity to correct any alleged issues raised by the customers.

124. O'Brien Enterprises has suffered a loss of customers and revenue through B&B Enterprises transfer of accounts based upon alleged grievances without providing any opportunity to respond and correct; and upon information and belief, other class members have suffered similar losses through B&B Enterprises' breach of contract.

125. Plaintiffs A&A Enterprises O'Brien Enterprises and the members of the class have suffered and will continue to suffer damages due to B&B Franchising's deliberate breach of contract, including but not limited to lost revenue, monetary losses from delay in payments and damage to their business reputations, relationships and goodwill.

126. B&B Franchising's willful, bad faith breach of contract entitles Plaintiffs and the class to an award of attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**FRAUD IN THE INDUCEMENT**
**(Defendant B&B Franchising)**

127. Plaintiffs re-allege and restate each and every preceding Paragraph as if rewritten herein at length.

128. B&B Franchising made express and implied representations in its Disclosure Documents in 2017 and thereafter that fraudulently induced Plaintiff A&A and other subclass members to purchase a franchise.

129. B&B Franchising represented that to subclass members that it was offering for sale to Franchisees a legitimate business opportunity with reputable persons who conducted their affairs in conformity with the law.

130. B&B Franchising represented to subclass members that use of the Jani-King trademark, service mark and commercials symbols constituted valuable consideration that it took care to protect.

131. B&B Franchising failed to disclose to subclass members in 2017 and thereafter that its operations were managed in part by an individual who was arrested for felony counts of passing bad checks, and who was required to compensate his victim by making payments through a county probation department in order to resolve the criminal charges.

132. B&B Franchising failed to disclose to subclass members in 2017 and thereafter that its original incorporator still maintained an office at its headquarters at 3800 Red Bank Road, that he acted under the full authority of B&B Franchising and his parents, (who held themselves out as its Members or "general partners").

133. B&B Franchising also failed to reveal to subclass members that its original owner also served as its statutory agent, through the guise of his ownership of

13

3800 Red Bank Road, LLC, and instead stated that that a local attorney was it statutory agent in the text of the Franchise Disclosure.

134. B&B Franchising did not reveal to subclass members the continued involvement of its original incorporator in management of the company, nor did it disclose that he had a history of arrest for importuning, pandering sexually oriented materials involving minors, and related charges, to which he pled guilty to reduced charges of public indecency and telephone harassment, as well as a conviction on two counts of assault after he discharged a gun that injured his wife.

135. B&B Franchising falsely represented to subclass members that it operated in the Greater Cincinnati area under the d/b/a Jani-King of Cincinnati, when in fact B&B had no active registration to do business in Ohio, Kentucky or Indiana under that fictitious name as of 2017.

136. Despite its statement to subclass members in the 2017 Franchise Disclosure Document that in January of 2011, Robert Seylhouwer "stepped down as CEO, but continued to remain as a General Partner," in filings with the Indiana Secretary of State on August 23, 2016 and September 5, 2018, B&B Franchising identified Robert Seylhouwer as CEO.

137. Despite its statement to subclass members in the 2017 Franchise Disclosure that James Dixon has been President since 2014, on April 25, 2019, B&B Franchising filed a report with the Commonwealth of Kentucky identifying Robert Seylhouwer as the President of B&B Franchising, LLC.

138. B&B Franchising failed to disclose to subclass members the multiple affiliated businesses being run from the same location by Blake Seylhouwer, who upon information and belief continued active involvement in management of the B&B Franchising and its finances.

139. Plaintiff A&A and other subclass members paid valuable consideration, and devoted their time and resources to building up their franchises with Jani-King of Cincinnati, only to discover that Jani-King of Cincinnati was not operating in an ethical, professional and legal manner.

140. B&B Franchising misrepresented to Plaintiff A&A and other subclass members its bona fides as a legitimate business opportunity as described above.

141. As a result of B&B Franchising's misrepresentations, Plaintiff A&A and other subclass members were fraudulently induced to become entangled in a business relationship with B&B Franchising, in which they were dependent upon the business ethics, professionalism and trustworthiness of B&B Franchising to receive the payments and other consideration due under the contract, to promote their businesses and protect their goodwill.

142. Plaintiff A&A and the other subclass members who entered into agreements in 2017 and thereafter would not have agreed to purchase a franchise from B&B

Franchising it they had not been misled by B&B Franchising about its operations.

143. Plaintiff A&A and other subclass members are entitled to rescission of the contract, including but not limited to a return of their full investment and a declaration that all terms of the Franchise Agreement, including any purported non-compete and non-solicitation clauses, are wholly void and unenforceable, as well as damages for harm and economic loss, including but not limited to payments owed for past performance and consequential damages.

144. Alternatively, Plaintiff A&A and other subclass members are entitled to reformation of the contract, to remove B&B Franchising as the franchisor, to entitled them to direct access to funds from client accounts, to permit them to tender payments to the franchisor for any benefits actually conferred by use of the Jani-King tradename, and damages for economic loss.

145. Plaintiff A&A and other subclass members have suffered economic and non-economic harm, including mental anguish and emotional distress, due to Defendant B&B Franchising's fraudulent conduct, entitling them to compensatory damages.

146. Defendant B&B Franchising's actions demonstrate willful disregard and deliberate intent to deceive, entitling Plaintiff A&A and other subclass members to an award of punitive damages.

### THIRD CAUSE OF ACTION
### NEGLIGENT SUPERVISION
### (Defendants JK INT'L, JKI and JKF)

147. Plaintiffs re-allege and restate each and every preceding Paragraph as if rewritten herein at length.

148. JK INT'L, JKI and JKF had a contractual and legal duty to oversee and supervise the operations of B&B Franchising LCC, in order to confirm that B&B Franchising was not in material breach of its obligations owed to themselves, or to any of B&B's Franchisees.

149. JK INT'L, JKI and JKF had a duty to the Franchisees of B&B Franchising to protect their business goodwill, by in turn protecting the reputation and goodwill of the Jani-King name and the Jani-King marks.

150. The B&B Franchising Disclosure Document states: "We operate under a Regional Franchise Agreement with JANI-KING FRANCHISNG, INC., who will be referred to in this document as "JKF." JKF was incorporated in Texas on March 11, 1983, and is a wholly owned subsidiary of JANI-KING INTERNATIONAL, INC."

151. The Disclosure Statement states: "JK INT'L and JKI do provide significant support and administrative and management services to the various operating affiliates ..."

152. According to the Franchise Disclosure Document, Jani-King International, Inc. ["JK INT'L"] granted B&B Franchising the right to use trademarks, service marks and other commercial symbols ("the Marks") through an Intercompany License.

153. The B&B Franchising Disclosure Document provides: "The Intercompany License grants us the right to use the Marks including licensing them to our franchisees and fulfilling our obligations under the Franchise Agreement. The Intercompany License is revocable for material breach of the Intercompany License agreement if we do not cure or begin to cure any breach after notice from JK INT'L."

154. The Franchise Agreement between B&B Franchising and its Franchisees, including the agreements signed by Plaintiffs and the members of the class, includes a provision that permits termination of the agreement based upon default "if any of the Principals is convicted of, pleads guilty to or no contest to, pleads down to a lesser crime, or receives deferred adjudication for a felony, a crime involving theft, a crime involving moral turpitude, or any other crime or offense that is reasonably likely, in the sole opinion of Franchisor, to adversely affect the Jani-King franchise program, any Jani-King trademarks, trade names, or the goodwill associated therewith ..."

155. Upon information and belief, B&B Franchising's Agreement with JK INT'L, JKI and/or JKF included, or in an exercise of reasonable diligence should have included, similar termination clauses.

156. JK INT'L, JKI and JKF had a duty to assure that B&B Franchising operated in a manner that provided Plaintiffs and the members of the class the benefit of the bargain in their agreements with B&B Franchising, including but not limited to an obligation to require B&B Franchising to operate in a professional, legal and ethical manner so as not to damage the goodwill, trademark or trade name of Jani-King.

157. JK INT'L, JKI and JKF had a duty to protect the goodwill of Plaintiffs and members of the class by assuring that B&B Franchising operated in a professional, legal and ethical manner.

158. By failing to adequately supervise B&B Franchising, Defendants JK INT'L, JKI and JKF breached their duty to protect Plaintiffs and other members of class from damage to their franchise operations, goodwill, business opportunities, tradename and trade dress.

159. Although, upon information and belief, JK INT'L, JKI and JKF required Blake Seylhouwer to divest himself of ownership of B&B Franchising sometime in 2015 when news of his criminal conviction based upon the altercation with his wife became locally and even nationally publicized, they failed to exercise due care to determine whether he actually separated himself from the operations of the company.

160. Upon information and belief, Defendants JK INT'L, JKI and JKF, permitted Blake Seylhouwer's parents to proceed as owners of B&B Franchising, and took

inadequate steps to determine whether they had in fact separated their son from the operations of the business.

161. Even a single site visit by Defendants JK INT'L, JKI or JKF would have revealed that Blake Seylhouwer still maintained an office at B&B Franchising, while his parents, who resided in Colorado, did not.

162. JK INT'L, JKI and JKF similarly took inadequate steps to determine if the books, records and finances of B&B Franchising were being managed in a legal and ethical manner, and took inadequate steps to require B&B Franchising to timely pay franchisees all amounts due to Plaintiffs and the members of the class under their franchise agreements with checks that did not bounce.

163. JK INT'L, JKI and JKF, upon information and belief, also failed to determine whether the Disclosure Documents provided by B&B Franchising to Plaintiff A&A and members of the subclass provided truthful, accurate, non-misleading and full disclosures.

164. JK INT'L, JKI and JKF, upon information and belief, took no steps to determine why Blake Seylhouwer operated multiple businesses from the same location as B&B Franchising, or to oversee how the books and records of the various business entities were maintained to guarantee no co-mingling with B&B Franchising, which neglect caused harm to Plaintiffs and the members of the class.

165. JK INT'L, JKI and JKF either failed to ascertain that a person with a felony arrest for passing bad checks was entrusted as the Vice President of Operations for B&B Franchising, or alternatively they knew but failed to take any action to protect the interests of Plaintiffs and the class from unscrupulous behavior.

166. JK INT'L, JKI and JKF failed to provide even the modicum of oversight necessary to assure that B&B Franchising was actually registered to do business in Ohio, Kentucky and Indiana as Jani-King of Cincinnati, thereby causing harm to Plaintiffs and the members of the class.

167. The continued incompetence and/or illegality of B&B Franchising in managing the operations and finances of the business they call Jani-King of Cincinnati has caused direct harm to Plaintiffs and the member of the class, through customer dissatisfaction, loss of business opportunities, damage to reputation and damaged goodwill.

168. JK INT'L, JKI and JKF's negligence in supervising the operations of B&B Franchising has permitted B&B Franchising to operate in an unscrupulous manner, contrary to the terms of the Franchise Agreement, which has caused Plaintiffs and members of the class to suffer harm by either being forced to acquiesce to Defendants' wrongful conduct in order to avoid retaliation or suffering retaliation if they advocate for their rights.

169. JK INT'L, JKI and JKF's failure to adequately supervise B&B Franchising has caused many potential customers to refuse to consider doing business with

17

Jani-King Franchisees in the greater Cincinnati region due to their negative experiences in dealing with B&B Franchising, which creates further harm to the business opportunities of Plaintiffs and the class.

170. As a direct and proximate result of Defendants JK INT'L, JKI and JKF negligent supervision of B&B Franchising, Plaintiff and the members of the class have suffered significant harm, including economic and non-economic loss, including loss of customers, damage to reputation, loss of goodwill, loss of business opportunity and emotional distress.

171. Defendants JK INT'L, JKI and JKF have acted with gross negligence and deliberate indifference, entitling Plaintiff and the Franchisees to punitive damages.

## FOURTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
## (All Defendants)

172. Plaintiffs re-allege and restate each and every preceding Paragraph as if rewritten herein at length.

173. Plaintiff O'Brien Enterprises has been a franchisee of B&B Franchising since 2014, and has grown its business into one the largest and most successful Jani-King franchises in the greater Cincinnati area.

174. Inasmuch as the Franchise Agreement between B&B Franchising and all its Franchisees, including O'Brien Enterprises, is a contract formed under Ohio law, the parties owe one another an obligation of good faith and fair dealing.

175. The obligation of good faith and fair dealing includes but is not limited to an obligation from B&B Franchising not to interfere with its Franchisees' business relationships with their customers, including customers of O'Brien Enterprises.

176. The obligation of good faith and fair dealing includes but is not limited to an obligation by B&B Franchising not to interfere with its Franchisees' business relationship with their own employees or contractors, including contractors engaged by O'Brien Enterprises.

177. Defendant B&B Franchising, acting through its Vice President of Operations Jerodd Atwood, without privilege to do so, interfered with O'Brien Enterprises' business relationship with its contractors by enticing O'Brien's long time, most senior contactor to terminate his relationship with O'Brien Enterprises in order to purchase a franchise from B&B Franchising and become a competitor of O'Brien Enterprises.

178. Defendant B&B Franchising's wrongful actions caused O'Brien Enterprises to lose its long time, reliable, highly entrusted senior contractor, thereby causing significant harm to O'Brien Enterprise's business.

179.   Defendant B&B Franchising, acting through its Vice President of Operations Jerodd Atwood, conspired to sell a franchise to O'Brien Enterprises' senior contractor and transfer to him a large customer of O'Brien Enterprises.

180.   Defendant B&B Franchising actions also caused O'Brien to lose a long time, valuable, established customer, thereby rendering significant harm to O'Brien's business.

181.   As a direct and proximate result of Defendant B&B Franchising's tortious interference with O'Brien's business relationship with its long time contractor, O'Brien has been forced to give up accounts that it can no longer manage.

182.   Defendant B&B Franchising realized a profit by enticing O'Brien's Contractor to to purchase a franchise for valuable consideration in order to service an account already being serviced by O'Brien.

183.   As a direct and proximate result of Defendant B&B Franchising's tortious interference with its business relationship with its contactor, O'Brien Enterprises has suffered significant harm, including but not limited to economic loss, damage to his business operations, loss of goodwill and emotional distress.

184.   As a direct and proximate result of Defendant B&B Franchising's tortious interference with his business relationship with its customers, Plaintiff has suffered significant harm, including but not limited to economic loss, damage to his business operations, loss of goodwill and emotional distress.

185.   Defendants JK INT'L, JKI and JKF negligently supervised, authorized and/or ratified the wrongful conduct of Defendant B&B Franchising, and thereby breached their duty to O'Brien Enterprises to protect the Jani-King name, its business goodwill and value of its Jani-King franchise.

186.   Upon information and belief, other class members have suffered similar experiences of B&B Franchising's interference with their customers and their employees or contractors, causing class members to suffer economic and non-economic harm.

187.   Upon information and belief, other members of the class have suffered similar experiences of Defendants JK INT'L, JKI and JKF negligently supervising, authorizing and/or ratifying the wrongful conduct of Defendant B&B Franchising, causing them to suffer economic and non-economic harm.

188.   Defendants acted willfully and with deliberate indifference to the rights of Plaintiff O'Brien Enterprises and upon information and belief, to other members of the class, entitling Plaintiff O'Brien and other members of the class to an award of punitive damages.

E-FILED 05/08/2020 02:51 PM   /   CONFIRMATION 944906   /   A 2001829   /   COMMON PLEAS DIVISION   /   IFOJ

### FIFTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION AND FRAUD
### (B&B Franchising)

189. Plaintiffs re-allege and restate each and every preceding Paragraph as if rewritten herein at length.

190. B&B Franchising has made false and misleading representations to A&A, O'Brien Enterprises and the members of the class.

191. Plaintiffs and the members of the class are entitled to rely upon the representations of B&B Franchising, based upon their contractual relationship and the implied covenant of good faith and fair dealing between parties to a contract.

192. B&B Franchising has made multiple misstatements and omissions to Plaintiffs and other members of the class, including but not limited to:

   a.  Misrepresentation of revenue due to Franchisees in Franchisee Reports;

   b.  Misrepresentation of Finders' Fee and credit for new business and new accounts;

   c.  Misrepresentation of causes for account reassignment;

   d.  Misrepresentation that payment is being timely tendered through the provision of invalid checks;

   e.  Misrepresentation of the cause for bounced checks;

   f.  Misrepresentation of the accuracy and legitimacy of accounting services provided by B&B Franchising.

193. Plaintiffs and the members of the class have justifiably relied upon B&B Franchising to provide accurate accounting and timely disbursements in accordance with the terms of the contract, only to learn that they have been deceived, and have suffered harm as a result.

194. As a direct and proximate result of B&B Franchising's misrepresentations and fraud, Plaintiffs and the members of the class have suffered harm, including but not limited to lost accounts, lost income, delayed compensation, damage to reputation, loss of business goodwill and emotional distress, and will continue to suffer such losses in the future.

195. Defendant B&B Franchising has acted with deliberate indifference and malice to Plaintiffs and other Franchisees, entitling them to an award of punitive damages.

**SIXTH CAUSE OF ACTION**
**REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF**
**(All Defendants)**

196.  Plaintiffs re-allege and restate each and every preceding Paragraph as if rewritten herein at length.

197.  The Franchise Agreements signed by Plaintiffs and members of the class and B&B Franchising lack mutuality, because they provide that B&B Franchising is not bound by its terms unless authorized by its agent in Colorado, which has not occurred.

198.  The Franchise Agreements signed by Plaintiffs and the members of the class falsely identify the Franchisor as d/b/a Jani-King of Cincinnat, and are executed only by Jani-King of Cincinnati, which is not in fact a registered tradename of B&B Franchising and which therefore constitutes misrepresentation of a material term of the contracts.

199.  B&B Franchising failed to disclose the identity and/or the criminal histories of key management personnel of B&B Franchising, which violated its duty to Plaintiffs and the members of the class.

200.  B&B Franchising's repeated breaches of its duties to Plaintiffs and continual breach of its obligation to timely pay the members of the class, render their Franchise Agreements unenforceable due to failure of consideration.

201.  Based upon the lack of mutuality, material misrepresentations and omissions and/or failure of consideration as described above, Plaintiffs and other members of the class are entitled to a declaration that their Franchise Agreements are rescinded and thereby void in their entirety, that any subsequent attempts to enforce terms in the Franchise Agreements, including terms that purport to limit claims, limit damages or shift fees and costs to Franchisees are unenforceable; that any negative covenants including non-compete and non-solicitation clauses are void and unenforceable, and that Plaintiffs and other members of the class are entitled to restitution of any payments made or other consideration provided to Defendants.

202.  In addition to rescission of the Franchise Agreements and restitution, Plaintiffs and the other Franchisees are entitled to declaration that damages are available to them based upon their previous reliance upon the terms of the contract, including but not limited to damages for economic harm and pecuniary loss.

203.  Plaintiffs and the members of the class are entitled to a declaration that the purported non-compete and non-solicitation agreements also fail because they are not necessary to protect any legitimate trade secrets or confidential commercial information of B&B Franchising, but rather are solely designed to prevent fair competition by former Franchisees in the rendering of janitorial services, and are not narrowly defined in geography or scope to protect any legitimate interest of B&B Franchising.

204. Defendants must be enjoined from attempting to enforce any purported non-compete or non-solicitation clauses in the Franchise Agreement because the agreements are void, unenforceable, Defendants lack clean hands and enforcement would be inequitable.

205. Defendants must be enjoined from obtaining or seeking to enforce any fee shifting provisions in the Franchise Agreement because the agreements are void, unenforceable, Defendants lack clean hands and enforcement would be inequitable.

206. Defendants must be enjoined from retaliating against Plaintiffs and any members of the Class for any actions taken by them to require Defendants to comply with their contractual obligations to Franchisees, whether through participation in this lawsuit or otherwise. Specifically, Defendants should be enjoined from removing or reassigning customer accounts of Plaintiffs or other Franchisees to others, or wrongfully withholding payments due under the Franchise Agreements.

**WHEREFORE, HAVING FULLY PLED, PLAINTIFFS REQUEST RELIEF AS FOLLOWS:**

A. That this matter be certified as a class action pursuant to Ohio R. Civ. P. 23(B)(1)(a) and Rule 23(B)(1)(b); 23(B)(2) and 23(B)(3);

B. That the Court issues declaratory and injunctive relief voiding the Franchise Agreements and enjoining enforcement of all negative covenants and fee shifting provisions and prohibiting retaliation against Plaintiffs and class members;

C. That the Court enjoin B&B Franchising from continuing operations under the direction, supervision or influence of Blake Seylhouwer aka Blake Daniels, Jerodd Atwood or any other persons with arrests and/or criminal convictions that involve fraud, moral turpitude or would damage the goodwill of the Jani-King tradename;

D. That the Court order reformation of the Franchise Agreements to protect the interests of Plaintiffs and the members of the class;

E. That the Court award Plaintiffs and the Class restitution, damages for breach of contract, consequential damages, reliance damages, compensatory damages, interest, attorneys' fees and costs;

F. That the Court award Plaintiffs and the Class punitive or exemplary damages;

G.  That the Court order all other relief to which Plaintiff and the members of the Class are entitled.

Respectfully submitted,

*/s/Janet G. Abaray*
Janet G. Abaray, Esq.  (Ohio Bar #0002943)
Burg Simpson Eldredge Hersh Jardine, P.C.
312 Walnut Street, Suite 2090
Cincinnati, Ohio 45202
Phone: 513-852-5600
Fax: 513-852-5611
Email: jabaray@burgsimpson.com

Counsel for Plaintiffs and the Class

Plaintiffs demand a trial by jury of all issues which can be so tried.

*/s/Janet G. Abaray*
Janet G. Abaray

23